```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| PATRICIA COBURN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | No. 08-2055-STA-dkv |
| | § | |
| CARGILL, INC., | § | |
| | § | |
| Defendant. | § | |

```
     ORDER GRANTING DEFENDANT CARGILL'S MOTION FOR SUMMARY JUDGMENT
                          (DOCKET ENTRY 27)
                               AND
                         ORDER OF DISMISSAL
```

On January 14, 2008, Plaintiff Patricia Coburn and eight other individuals filed a joint pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.  (Docket Entry ("D.E.") 1).  United States District Judge J. Daniel Breen issued an order on January 29, 2008 that, inter alia, severed the actions and directed the Clerk to open a new civil action for each plaintiff.  (D.E. 2 at 2.) On March 20, 2008, Plaintiff Coburn was directed to amend her complaint. (D.E. 4 at 3.) On April 8, 2008, Coburn filed an amended complaint for retaliation and race discrimination, attaching a charge and a notice of right to sue for a claim of race discrimination.[1] (D.E. 5.) On April 21, 2008,

---

[1] Although Plaintiffs' original joint complaint alleged in conclusory fashion that Plaintiffs' claims were also brought under 42 U.S.C. § 1981, Coburn's amended complaint only referred to § 1981 in conjunction with Plaintiff's claims of race discrimination/harassment. Forty-two U.S.C. § 1981 prohibits racial discrimination in the making and enforcing of private contracts. To the extent the vague reference to 42 U.S.C. § 1981 is sufficient to state a claim for race discrimination under § 1981, the claim is analyzed under the Title VII McDonnell Douglas/Burdine framework. See Patterson v. McLean Credit Union, 491 U.S. 164, 186

Judge Breen entered an order dismissing Defendants Martin Crowder, Tim Campbell, Joe Sparks, and Amanda Jordan and to issue process for Cargill, Inc. ("Cargill") on Plaintiff's Title VII claims. (D.E. 6.) (D.E. 6.) On May 21, 2008, the case was reassigned to the undersigned judge.

On May 27, 2008, Cargill filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. 10.) On June 25, 2008, Plaintiff responded to the motion to dismiss. (D.E. 13.) On March 26, 2009, the Court entered an order granting Defendant Cargill's motion to dismiss Plaintiff's claim of retaliation and denied Defendant Cargill's motion to dismiss Plaintiff's claims of race discrimination. (D.E. 32.)

On March 18, 2009, Cargill filed a motion for summary judgment. (D.E. 27.) On April 15, 2009, Plaintiff filed her response. (D.E. 37.) On May 28, 2009, Cargill filed a motion for leave to file a reply to Plaintiff's response. (D.E. 43.) The motion was granted and on June 1, 2009, Defendant filed a reply. (D.E. 47.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any

---

(1989); Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). The Court's conclusion that Coburn fails to establish a Title VII prima facie case governs the outcome of the issue, therefore, any claims under § 1981 will not be addressed separately.

> material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)(same).

When ruling on a motion for summary judgment the court may consider "pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits." " Fed. R. Civ. P. 56(c). "Other exhibits may be admitted into evidence and considered if the exhibits are properly authenticated and attached to an affidavit." Woodruff v. National Life Ins. Co., 2006 WL 2792204 (E.D. Tenn. 2006)(citing Guzman v. Denny's Inc., 40 F. Supp.2d 930, 935 n. 3 (S.D. Ohio 1999)).  "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Federal

Rule of Civil Procedure 56(e). Documents which do not meet those requirements cannot be considered by the court." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n. 20 (8th Cir. 2000); see also Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000)(a court may consider "properly authenticated and admissible documents or exhibits" when evaluating a summary judgment motion); 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988)("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").[2]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's

---

[2] Documents submitted which do not comply with the requirements of Rule 56(e) must be disregarded. See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991); State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d 259, 264 (6th Cir. 1979). Plaintiff's response to Cargill's motion for summary judgment includes emails, photographs, and documents generated by the Tennessee Occupations Safety and Health Administration ("TOSHA"). These particular documents are offered without any supporting affidavit to verify their authenticity. The Court has reviewed the documents despite the fact that the documents were not properly authenticated. The affidavits of other Cargill Plaintiffs which were included as exhibits were stricken by previous order of the Court.

inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted).  The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter.  Liberty Lobby, 477 U.S. at 249.  Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

I.   Relevant Facts

   The relevant facts follow:[3]

---

[3]   The Court's task in evaluating Defendant's motion for summary judgment is complicated by Plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides,

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Plaintiff objects to paragraphs 28-46 but has not affixed to the "objections" copies of the portions of the record relied upon to evidence his dispute.  The Court previously dismissed Plaintiff's claim of retaliation, therefore paragraphs 37-42 are excluded from this order. The Court has attempted to construe the undisputed facts from Plaintiff's verified complaint, the record excerpts of deposition testimony, attached as exhibits to Defendant's motion and reply, and the verified exhibits attached to the affidavit of Timothy Campbell. Even after reviewing Plaintiff's unverified exhibits, the Court discerns no basis for Plaintiff's objections to these paragraphs. The affidavits attached to Plaintiff's response were stricken by previous order of the Court.  Therefore, the Court includes paragraphs 28-36 and 44-46 as undisputed, but has renumbered paragraphs 44-47 as 37-40.

Coburn's Employment at Cargill and Knowledge

of Anti-Harassment Policies

1. Plaintiff, Patricia Coburn ("Coburn"), has worked for Cargill at its Second Street grain elevator (the "Facility") since July of 1999.(Deposition of Patricia Coburn ("Coburn Dep."), D.E. 27-3, relevant excerpts attached as Exhibit A, at pp. 13:14-15:1.)

2. Cargill purchased the facility from Continental Grain Company in July 1999. D.E. 49, Affidavit of Tim Campbell ("Campbell Aff."), Exhibit B, at ¶ 3.)

3. Prior to July 1999, Coburn worked at the same facility as an employee of Continental Grain. (Coburn Dep. at pp. 15:2-9.)

4. In her current position, Coburn is responsible for computer data entry with regard to grain delivered to the Facility, grading samples from those deliveries and performing various housekeeping duties. (Id. at pp. 20:15-21:1.)

5. Coburn is a member of Teamsters Local 667 (the "Union"). (Id. at pp. 23:21-24:4.)

6. During the relevant time period, there were approximately thirteen production employees at the Facility. (Campbell Aff. at ¶ 4.)

7. All but one of those employees was African American. (Id.)

8. Throughout her employment, Coburn has been required to comply with Cargill's policies and procedures and the guidelines outlined in the collective bargaining agreement that governs the relationship between Cargill and the Union. (Coburn Dep. at pp. 25:9-18.)

9. Cargill's policy against harassment directs any employee who believes that he or she has been subjected to alleged harassment or illegal discrimination to lodge a complaint with the Facility's Human Resources Manager, the Business Unit HR Manager or Cargill's Employee Relations Department. (Campbell Aff. at ¶ 5; see Coburn Dep. at pp. 27:12-23, 30:4-23.)

10. This policy provides a clear avenue for employee complaints regarding alleged racial harassment and obligates Cargill to take timely steps to investigate and correct offending behavior following those complaints. (See Campbell Aff. at ¶ 5.)

11. Coburn is also aware that she may file a Union grievance regarding any alleged harassment and/or discriminatory conduct. (Coburn Dep. at pp. 29:10-22, 36:10-22.)

12. Coburn has never complained about purported harassment to the Facility's management staff or filed a grievance relating to workplace harassment at any time during her employment with Cargill. (Id. at pp. 36:3-4, 95:9-97:9.)

Coburn's Lack of Evidence of Asbestos Exposure

13. Coburn has no knowledge that airborne asbestos fibers have been found within the Facility at any point in time. (Id. at pp. 45:15-24, 55:18-56:2, 70:11-71:6.)

14. Coburn has no knowledge that any material in the Facility has ever been found to contain asbestos. (See id. at pp. 52:1-53:13, 54:5-17, 70:11-71:6.)

15. Coburn has no evidence that Cargill discovered the presence of airborne asbestos fibers at the Facility at any time since the date it purchased the elevator. (Id. at pp. 45:15-24, 47:14-24, 53:8-13, 67:6-11.)

16. In December 2006, Cargill removed broken floor tiles from an area of the Facility due to a concern that they may have contained asbestos. (Campbell Aff. at ¶ 8; see Coburn Dep. at pp. 51:15-18.)

17. This removal was performed by an environmental remediation contracting company on December 13, 2006. (Campbell Aff. at ¶ 8, see Coburn Dep. at pp. 51:15-18, 55:18-56:2.)

18. Cargill hired an environmental services company to conduct air monitoring during the removal. (Campbell Aff. at ¶ 8; see Coburn Dep. at pp. 54:18-55:6.)

19. This testing found that the air quality in the area of the floor tiles during their removal satisfied all applicable standards. (Campbell Aff. at ¶ 8; see Coburn Dep. at pp. 55:18-56:2.)

20. Coburn admits she has no basis to suggest that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos whatsoever and cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (Coburn Dep. at pp. 52:1-53:13, 54:5-17, 55:18-56:2, 70:11-71:6.)

21. In February 2007, the Tennessee Occupational Safety and Health Administration ("TOSHA") conducted asbestos testing on materials in the Facility in response to an anonymous complaint. (Campbell Aff. at ¶ 11; see Coburn Dep. at pp. 59:5-62:15.)

22. TOSHA sampled and tested each of seven areas that had been identified as areas of concern by the complainant through an independent laboratory. (Campbell Aff. at ¶ 11; see

Coburn Dep. at pp. 64:16-65-1.)

23. TOSHA informed Cargill that it did not detect asbestos fibers in any of the seven samples it took during the inspection. (Campbell Aff. at ¶ 11; see Coburn Dep. at pp. 65:9-66:4.)

24. Coburn bases her belief that asbestos was present in the Facility on a warning sign that was posted in the vicinity of the broken floor tile in the fall of 2006. (See Coburn Dep. at pp. 44:8-21, 48:2-25.)

25. Pursuant to its asbestos safety and removal policies, Cargill posted this sign as a precautionary measure until the tiles could be removed. (Campbell Aff. at ¶¶ 6-7.)

26. Coburn concedes that no health care provider has informed her that she has been exposed to asbestos. (Coburn Dep. at pp. 68:19-23, 71:13-19, 72:12-15.)

27. Coburn concedes that to the extent that she was exposed to asbestos, that exposure occurred in the course and scope of her employment. (Id. at pp. 69:18-70:6.)

### Coburn's EEOC Charge and Complaint

28. On January 29, 2007, Coburn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that Cargill had assigned her to work in areas contaminated with asbestos because of her race. (Coburn Dep. at pp. 97:15-98:8; January 29, 2007 EEOC Charge ("Charge"), attached as Exhibit C.)

29. The Charge does not address any claim for alleged racial harassment. (Charge.)

30. On January 14, 2008, Coburn and eight other individuals filed a joint Complaint against Cargill. (D.E. 1.)

31. On January 29, 2008, the Court severed that action into nine separate lawsuits, including the instant case. (January 29, 2008 Order, D.E. 2.)

32. Coburn filed her Amended Complaint on April 8, 2008, asserting that Cargill had discriminated against her on the basis of her race by requiring her to work in asbestos-contaminated areas and retaliated against her for complaining about alleged discrimination to TOSHA and/or the EEOC. (D.E. 5.)

33. On May 27, 2008, Cargill moved to dismiss each of Coburn's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Cargill's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, D.E. 10.)

33A. On March 26, 2009, the Court issued its Order Partially Granting and Partially Denying Defendant Cargill, Inc.'s Motion to Dismiss. (March 26, 2009 Order. D.E. 32.) The Court denied Cargill's Motion with respect to the race discrimination claims but dismissed Coburn's retaliation claim. (Id.)

### Coburn's Claim for Race Discrimination

34. Coburn cannot identify any Caucasian production employees that worked at the Facility at the time she contends she was exposed to asbestos. (Coburn Dep. at pp. 79:16-80:5.)

35. Coburn cannot identify any production employees, regardless of race, that were not required to work in the same locations she contends contained asbestos. (Id. at pp. 78:15-79:2.)

36. Coburn contends that certain unidentified management employees may not have ventured into those areas. (Id. at pp. 81:9-82-14.)

### Coburn's Claim for Hostile Work Environment

37. Coburn asserts that Cargill employees have subjected her to three alleged incidents that she believes to have been harassing: an occasion where Tim Adams, a Cargill supervisor, allegedly called her "girls"; an occasion where Adams allegedly requested either Coburn or a male coworker to rub his feet; and an occasion in which "Amanda" purportedly said the phrase "hey girl, how you doing" to Coburn. (Id. at pp. 84:13-88:16, 91:15-92:6.)

38. Coburn has not produced any evidence regarding the context in which these statements were made that could support a conclusion that they were somehow racially motivated. (See id. at pp. 84:13-89:25, 91:15-92:6.)

39. Coburn surmises that being referred to as "girl" is racial harassment because the individuals who purportedly did so "kn[ew her] name." (Id. at pp. 87:24-88:2, 91:15-23.)

40. The union steward is not a member of Cargill's management staff or human resources department and is not otherwise authorized to accept complaints of harassment on Cargill's behalf. (See Campbell Aff. at ¶ 5.)

II. Legal Analysis

   A. Racial Discrimination Based on Requirement that Coburn Work in Asbestos Contaminated Environment

   The United States Supreme Court in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973), established a method for evaluating evidence in discrimination cases, where, as here, Plaintiff has no direct evidence of discrimination.[4] That method has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

To establish a prima facie case of discrimination, Plaintiff must demonstrate:

> (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and (4) circumstances indicated that his [or her] race played a role in the adverse employment action.

See McDonnell Douglas Corp. v. Green, 411 U.S. at 802; Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001). Put differently,

---

[4] Plaintiff alleges, but does not provide credible, material evidence of direct discrimination "which, if believed requires a conclusion that unlawful discrimination was at least a motivating factor in the [Defendant's] actions" and "does not require a factfinder to draw any inferences" to reach that conclusion. Kocak v. Community Health Partners of Ohio, Inc., 400 F.3d 466, 470 (6th Cir. 2005). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006). Because the Court's review of the record finds no material evidence of direct discrimination the Plaintiff must establish a prima facie case of discrimination pursuant to the McDonnell Douglas formulation from which a discriminatory motive may be inferred.

element (4) requires Plaintiff to show, that for the same or similar conduct, she was treated differently than similarly situated employees. The fourth prong requires that Plaintiff show that the person treated more favorably was similarly situated to Plaintiff in all relevant respects. Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002). See also Clay v. United Parcel Service, Inc., 501 F.3d 695, 703 (6th Cir. 2007).

Coburn contends that Cargill assigned her to work in an area contaminated with asbestos and did not assign any nonminority workers to that area. The parties agree that Plaintiff is a member of a protected class and that she was qualified for her position. Defendant Cargill argues that Plaintiff fails to establish a prima facie case of race discrimination because she cannot demonstrate that she suffered an adverse employment action or that she was treated differently than similarly situated individuals of an unprotected class. (D.E. 27-1, p. 5.)

Defendant has provided the Court with the affidavit of Timothy Campbell, former Farm Services Group Operations ("FSG") Leader at Cargill, who was responsible for the Cargill grain elevator where Plaintiff was employed from November 15, 1999, until January 3, 2008. (D.E. 49, p. 1.) Campbell states that Cargill employed thirteen (13) production employees during his tenure and all but one of those employees was African-American. (Id. at 2.) Campbell states that in September 2006, Tom Zemanick, Cargill's United States Grain Plant Operations Manager, observed some broken floor tiles underneath bin 101 in the southeast corner of the elevator. (Id.) Even though no manager had information or knowledge that the tiles contained asbestos, Zemanick directed that the tiles be removed and a warning

sign was posted. (Id.)  An environmental remediation contracting company removed the broken tiles on December 13, 2006, and an environmental services company conducted air monitoring during the removal. (Id.) The air quality during removal satisfied all applicable standards. (Id.; Exhibit 2, p. 5.) Additional testing was performed by TOSHA in February 2007 and no asbestos fibers were detected. (Id. at 3; Exhibit 3, p. 6.)

Coburn responds that she was required to sweep and clean broken floor tiles from 2000 until 2006. She assumes that Cargill's posted warning sign, the removal of broken floor tiles, and an unauthenticated "courtesy notification for asbestos removal" which Defendant filed with the Memphis Shelby County Health Department that the floor tiles were to be removed in December 2006, constitute proof that the tiles contained asbestos. (D.E. 37, p. 2.) However, Coburn admits she has no basis for her assumption that the floor tiles removed from the Facility on December 13, 2006 contained any asbestos whatsoever and she cannot dispute that the air monitoring performed in conjunction therewith demonstrated that the Facility's air quality satisfied all applicable laws and regulations. (Coburn Dep. at pp. 52:1-53:13, 54:5-17, 55:18-56:2, 70:11-71:6.) Likewise, Coburn has no knowledge that airborne asbestos fibers have been found within the Facility at any point in time. (Id.  at pp. 45:15-24, 55:18-56:2, 70:11-71:6.)  Coburn concedes that no health care provider has informed her that she has been exposed to asbestos. (Coburn Dep. at pp. 68:19-23, 71:13-19, 72:12-15.)

Asbestos is dangerous only when airborne and inhaled See generally 29 C.F.R. § 1910.1001(c)(establishing limits on the concentration of airborne asbestos to which an employee can safely

be exposed). The "courtesy" notification does not establish that the tiles were found to contain asbestos and does not correlate to airborne asbestos which is measured by air monitoring. The Court notes that Coburn's unauthenticated exhibits also contain a statement that "a survey completed by a professional asbestos survey company in 2000 found no asbestos" on the Cargill site. (D.E. 37, p. 27.) Plaintiff has provided no affidavit or authenticated document which rebut Campbell's affidavit or which establishes that the floor tiles contained asbestos, that she was exposed to asbestos fibers, or that the air monitoring revealed any airborne asbestos.

During Coburn's deposition, Coburn could not identify any Caucasian production employees that worked at the Facility at the time she contends she was exposed to asbestos. (Coburn Dep. at pp. 79:16-80:5.) Coburn could not identify any production employees, regardless of race, that were not required to work in the same locations she contends contained asbestos. (Id. at pp. 78:15-79:2.) Although Coburn contends that certain unidentified management employees may not have ventured into those areas, (id. at pp. 81:9-82-14), management employees are not similarly situated to production employees.

In the response to the motion for summary judgment, Coburn alleges that "Mike Thompson ... was not required to work in these contaminated areas" and cites the Court to Mickens v. Cargill, No. 01-2535-BBD (W.D. Tenn. July 23, 2002). The claims from the case which involved Thompson, a white employee, were for racial discrimination by wage disparity and layoffs. Those claims were determined to be without merit because the wage disparity was corrected by Cargill upon the discovery of a payroll error and

Thompson was not treated differently than the minority employees. (Id., D.E. 18.) Defendant replies that Coburn alleges that Thompson was not required to work in the allegedly asbestos-contaminated areas in 2001, seven years before she filed this lawsuit and six years before she filed the EEOC charge on which this race discrimination claim is based. (D.E. 47, p. 5.) The 2001 case provides no support for Coburn's present claims.

Because Plaintiff fails to establish by affidavits or other evidence that she suffered an adverse employment action or "was treated differently than similarly-situated non-minority employees," Mitchell, 964 F.2d at 582-83, Plaintiff fails to state a prima facie case of race discrimination. Bald assertions and conclusory statements fail to provide any factual support for Coburn's claim of race discrimination. Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996). There are no genuine issues of material fact as it relates to Plaintiff's claim of race discrimination, and Defendant is entitled to judgment as a matter of law.

B.   Racial Harassment & Hostile Work Environment

The elements of a Title VII hostile work environment claim are as follows:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcome harassment; 3) the harassment complained of was based upon race; 4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive working environment; and 5) there is some basis for employer liability.

Russell v. University of Toledo, 537 F.3d 596, 608 (6th Cir. 2008)); Clay, 501 F.3d at 706.

"Actionable harassment exists if 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Farmer v. Cleveland Public Power, 295 F.3d 593, 604 (6th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 2001). The standard for whether an employee has been subjected to a hostile work environment has both an objective and a subjective component. Newman v. Federal Express Corp., 266 F.3d 401, 405 (6th Cir. 2001). There is no Title VII violation if the conduct at issue "is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.[5]

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance.

Id. at 23; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998) (recognizing the necessity of applying "[c]ommon sense" and "an appropriate sensitivity to social context"). As the Supreme Court states in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), Title VII is not meant to be a "general civility code." Id. at 788.

Defendant contends that Plaintiff cannot come forward with sufficient evidence to create a factual issue with respect to the fourth element of a prima facie case. (D.E. 27-1, p. 11.)  Coburn

---

[5]     "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. at 21-22.

contends that her assignment to the work area that she believes contained asbestos constitutes racial harassment. (D.E. 37, p. 4.) As set forth in the preceding section, Coburn has not established a genuine issue of material fact that her work area contained asbestos.

During Coburn's deposition, she conceded that her harassment claim is based on three alleged incidents that she believes to have been harassing: an occasion where Tim Adams, a Cargill supervisor, allegedly called her and a male coworker "girls"; an occasion where Adams allegedly requested either Coburn or a male coworker to rub his feet; and an occasion in which "Amanda" purportedly said the phrase "hey girl, how you doing" to Coburn. (Id. at pp. 84:13-88:16, 91:15-92:6.) Coburn has not produced any evidence regarding the context in which these statements were made that could support a conclusion that they were somehow racially motivated. (See id. at pp. 84:13-89:25, 91:15-92:6.)  Plaintiff's subjective belief that these neutral statements were based on race is insufficient to establish they were race based.

Coburn's reply notes that her complaint alleged that "she and all the black employees were called boys and girls."[6] (D.E. 37, p. 4.)  Plaintiff's amended complaint also alleges that a supervisor made the statement that Plaintiff and other workers did not need a break and he "would work you all like mules." (D.E. 5, p. 8.)  These allegations, however, directly contradict her deposition testimony. Coburn was asked during the deposition, whether Adams had made any

---

[6] Plaintiff's amended complaint does contain this allegation. (D.E. 5, p. 8.)  However, the allegation in the original joint complaint pertained to Plaintiff Seay, not to Coburn. (D.E. 1, p. 10.) A plaintiff's knowledge of acts of harassment directed against other employees is not necessarily sufficient to establish a hostile work environment. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 226 (6th Cir. 2008).

other "racial remark or harassed [her] in any [other] way," Coburn responded "[t]hat's it." (D.E. 47-1, Exhibit A, p. 91:10-14.)

Coburn's reply also relates an incident where racially offensive language was scrawled on a portable toilet located outside of the Cargill facility. (D.E. 37, p. 4.) During Coburn's deposition, Coburn did not mention the sign on the portable toilet until counsel questioned why it was in Coburn's discovery. Coburn testified that she did not take the picture, didn't know who took the picture, she didn't know why Mickens gave her the picture, she did not recall seeing the language, she didn't complain about it, she did not know who wrote the language, and she did not know how long the language was on the toilet wall. (D.E. 47-1, Exhibit A, pp. 117:10-123:7.) Coburn fails to allege that a Cargill employee was responsible for the writing and concedes the language was removed.[7] (Id.)

Coburn's allegations do not rise to the level of extreme conduct required to state a claim for a racially hostile work environment. Clay, 501 F.3d at 707-08. There is no indication that the cited conduct unreasonably interfered with Plaintiff's work performance. Simply stated, extensive analysis is not required to reach the conclusion that the cited incidents did not constitute the type of sufficiently severe or pervasive hostile work environment to alter the conditions of Coburn's employment. Coburn has failed to come forward with evidence demonstrating she was subjected to a racially hostile work environment during her employment at Cargill and Defendant is entitled to judgment as a matter of law.

---

[7] Employers are generally not liable for non-employee conduct outside the workplace or for employee conduct within the workplace where the employer takes prompt remedial action upon learning of the offensive behavior. Fleenor v. Hewitt Soap Co., 81 F.3d 48, 51 (6th Cir. 1996).

Defendant Cargill's motion for summary judgment (D.E. 27) is GRANTED in its entirety. Accordingly, the Court DISMISSES Plaintiff's complaint.

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should she seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997).

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. The same considerations that lead the Court to dismiss this case compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3),

that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 24th day of March, 2010.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE